Ramona PEREZ, Plaintiff–Appellant,

v.

Shirley S. CHATER, Commissioner of Social Security Administration, Defendant–Appellee.

No. 902, Docket 95–6131.

United States Court of Appeals, Second Circuit.

Argued Jan. 9, 1996.

Decided Feb. 22, 1996.

**42**

James M. Baker, Bronx Legal Services, New York City, for Plaintiff–Appellant.

Lorraine S. Novinski, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney for the Southern District of New York, Steven M. Haber, Assistant United States Attorney, of counsel), for Defendant–Appellee.

Before LUMBARD, VAN GRAAFEILAND and MINER, Circuit Judges.

MINER, Circuit Judge:

Plaintiff-appellant Ramona Perez appeals from a judgment of the United States District Court for the Southern District of New York (Keenan, J.) affirming the decision of the Secretary of Health and Human Services (the "Secretary") to deny Perez' application for social security disability insurance benefits ("SSD") and supplemental security income benefits ("SSI").[1] The district court found that the Secretary's determination that Perez was not disabled prior to February 13, 1992 was supported by substantial evidence.

For the reasons set forth below, we affirm the judgment of the district court.

## BACKGROUND

In March of 1990, Perez applied for SSD and SSI benefits under Title II and Title XVI of the Social Security Act. 42 U.S.C. §§ 401 et seq., 1381 et seq. The Secretary rejected both applications in May of 1990. On October 11, 1991, Perez filed a second set of applications for SSD and SSI benefits, alleging that she had been unable to work since December of 1989 due to back pain and arthritis in her knees. These applications also were denied, and Perez requested a hearing before an ALJ to review her October 11, 1991 applications.

On December 16, 1992, a hearing was held before an ALJ. Perez testified that she was 47 years old, had completed eight years of education, and had worked recently as a taxi driver and a sewing machine operator. She also testified that she had been unemployed

---

1. Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security Administration. *See* 42 U.S.C. §§ 901, 902. Accordingly, Shirley S. Chater, Commissioner of Social Security Administration, was substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. We refer to the Secretary in this opinion because she was the appropriate party at the time of the decisions at issue on this appeal.

since 1987, and that she was unable to work as a result of knee and back problems.

The ALJ reviewed Perez' medical records, including a May 16, 1990 report from Perez' treating physician, Dr. A. Celestin. This report stated that Dr. Celestin had treated Perez for arthritis of the knees from January 17, 1988 through March 19, 1990. The report noted that Perez had tenderness in her knees, but that her range of motion was normal. Dr. Celestin also reported that Perez' gait and station were normal, and that she did not need the assistance of orthotic devices. Dr. Celestin indicated that Perez' arthritic knee pain had been aggravated by her recent weight gain.

The ALJ also considered a February 25, 1991 report stating that a computerized tomography ("CT") of Perez' brain and cervical spine revealed no abnormalities except for a herniated disc at disc level C4–5. In addition, two other reports stated that magnetic resonance imagings ("MRIs") of the spine, performed in August of 1991, revealed no evidence of disc herniation, but did reveal minimal centrally bulging discs at levels C4–5, C5–6, and C6–7 and disc degeneration at other disc levels.

The medical record before the ALJ also contained a February 20, 1992 report prepared by Dr. Agustin Sanchez. Dr. Sanchez' report indicated that he had examined Perez for the first time on February 13, 1992, and that Perez had complained of back pain, numbness in her right hand, and decreased strength. The report detailed Perez' limited range of motion of the knees and spine and her decreased strength. Dr. Sanchez concluded that Perez was limited to lifting and carrying less than five pounds of weight, and that she was unable to stand and/or walk more than two hours per day and to sit more than six hours per day.

Finally, the ALJ considered two additional reports. A November 12, 1992 report prepared by Dr. M. El–Dakkak stated that Perez had undergone arthroscopic surgery on both knees. The report indicated that Perez was capable of lifting and carrying up to ten pounds of weight, continuously standing for two hours, continuously sitting for two hours, and alternately sitting or standing at one time for three hours. A report prepared by Dr. Mario Mancheno indicated that he had examined Perez on May 1, 1992 and had concluded that she was capable of light lifting and carrying, light pushing and pulling, and that her sitting was not restricted.

On January 28, 1993, the ALJ determined that, as of February 13, 1992, Perez was disabled for the purpose of receiving benefits under the Social Security Act. As a result of the ALJ's decision, Perez was not entitled to SSI benefits for the period between October 11, 1991, the date of her SSI application, and February 13, 1992. Because the ALJ determined that Perez had not become disabled prior to December 31, 1989, the date on which her disability insured status expired, Perez was not entitled to any SSD benefits.[2]

After the ALJ issued his decision, Perez requested review by the Appeals Council and submitted three pieces of new evidence: (1) Dr. Celestin's treatment notes for the period of January 17, 1988 through March 19, 1990; (2) an April 21, 1993 report from Dr. Celestin; and (3) an April 16, 1993 report from Dr. Sanchez. The new report from Dr. Celestin, who was Perez' treating physician from 1988 to 1990, indicated that Perez suffered from arthritis in both of her knees, and that she could stand continuously for up to one hour, sit continuously for up to five hours, and alternately sit or stand at one time for one hour. Dr. Sanchez' report of April 16, 1993 indicated that he had treated Perez for back pain and arthritis of the knees, and that Perez' last visit had been on February 13, 1992. Dr. Sanchez stated that Perez could stand continuously for up to thirty minutes, sit continuously for up to thirty minutes, and alternately sit or stand for up to one hour at a time. The Appeals Council denied Perez' request for review, and stated that it had considered the new evidence and that it did not provide a basis for changing the ALJ's decision.

---

2. In order to be eligible to receive SSD, a claimant must have worked for at least 20 of the 40 calendar quarters preceding the onset of disability. *See* 42 U.S.C. § 423(c)(1). December 31, 1989 was the last date on which Perez satisfied this requirement.

Perez sought review of the Secretary's decision in the district court, pursuant to 42 U.S.C. § 405(g). Perez then moved for judgment on the pleadings, pursuant to Fed. R.Civ.P. 12(c), and the Secretary cross-moved for judgment on the pleadings. On April 7, 1995, the district court denied Perez' motion and granted the Secretary's motion. *Perez v. Shalala*, 890 F.Supp. 218 (S.D.N.Y. 1995). Relying on *Eads v. Secretary of Department of Health & Human Services*, 983 F.2d 815 (7th Cir.1993), the district court held that the new evidence submitted to the Appeals Council did not form part of the administrative record for review and that it was not required to consider the new evidence. Nonetheless, the district court stated that, even if it were to consider the new evidence submitted to the Appeals Council, this evidence did not support Perez' contention that she was disabled prior to February 13, 1992. Accordingly, the district court concluded that the Secretary's decision was supported by substantial evidence. This appeal followed.

## DISCUSSION

On appeal, Perez contends that the district court erred in holding that the evidence submitted to the Appeals Council following the decision of the ALJ did not become part of the record for the purpose of judicial review. She also claims that, because this evidence contradicted the ALJ's finding that she was not disabled prior to February 13, 1992, the Secretary's decision is not supported by substantial evidence. Finally, Perez contends that she was denied a fair hearing because the ALJ did not fully develop the administrative record.

*1. Contents of the Record*

A request for Appeals Council review of an ALJ's decision is the fourth and final stage in the administrative process of adjudicating claims for benefits under the Social Security Act.[3] Social Security regulations expressly authorize a claimant to submit new and material evidence to the Appeals Council when

requesting review of an ALJ's decision. 20 C.F.R. §§ 404.970(b), 416.1470(b). If the new evidence relates to a period before the ALJ's decision, the Appeals Council "shall evaluate the entire record including the new and material evidence submitted ... [and] then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." § 404.970(b); *see also* § 416.1470(b).

When the Appeals Council grants review, the decision of the Appeals Council is the final decision of the Secretary. *See* 20 C.F.R. §§ 404.981, 416.1481. However, if the Appeals Council denies review, the ALJ's decision becomes the Secretary's final decision. *See* §§ 404.981, 416.1481. The final decision of the Secretary is subject to judicial review. 42 U.S.C. § 405(g).

█ In reviewing the Secretary's decision in the present case, the district court found that the new evidence submitted to the Appeals Council did not form part of the administrative record for judicial review. However, Perez argues that this evidence is part of the administrative record even when the Appeals Council denies review of the ALJ's decision.

The circuits that have addressed this question have reached different conclusions. The Sixth and Seventh Circuits have held that, when the Appeals Council denies review, the administrative record does not include new evidence first submitted to the Appeals Council. *See Cotton v. Sullivan*, 2 F.3d 692, 695–96 (6th Cir.1993); *Eads*, 983 F.2d at 817. In *Eads*, the Seventh Circuit held that, because it is the ALJ's decision that is reviewed by the district court when the Appeals Council denies review, "[t]he correctness of that decision depends on the evidence that was before [the ALJ]." 983 F.2d at 817. The court stated that to hold otherwise "would change our role from that of a reviewing court to that of an administrative law judge, required to sift and weigh evidence in the first instance, rather than limited as we are

3. The first three steps are the initial determination, reconsideration, and a hearing before an ALJ. *See* 20 C.F.R. §§ 404.900, 416.1400.

to reviewing evidentiary determinations made by the front-line factfinder." *Id.* at 817–18.

On the other hand, five circuits have concluded that the new evidence submitted to the Appeals Council becomes part of the administrative record for purposes of judicial review when the Council denies review. *O'Dell v. Shalala,* 44 F.3d 855, 859 (10th Cir.1994); *Keeton v. Department of Health & Human Servs.,* 21 F.3d 1064, 1067 (11th Cir. 1994); *Ramirez v. Shalala,* 8 F.3d 1449, 1452 (9th Cir.1993); *Nelson v. Sullivan,* 966 F.2d 363, 366 (8th Cir.1992); *Wilkins v. Secretary, Dep't of Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir.1991). In *O'Dell,* the Tenth Circuit held that new evidence submitted to the Appeals Council "becomes part of the administrative record to be considered when evaluating the Secretary's decision for substantial evidence." 44 F.3d at 859. The *O'Dell* court reviewed the other circuits' reasoning in reaching their decisions and explained that its holding was based on three considerations. *Id.* at 858–59. The court noted that 20 C.F.R. § 404.970(b) expressly authorizes claimants to submit new evidence to the Appeals Council, and that ignoring this evidence on review might undermine the purpose of the regulation. Second, the court observed that the regulations seem to make the new evidence part of the administrative record by requiring the Appeals Council to evaluate the new evidence. Finally, the court stated that, "because the Secretary's decision does not become final until after the Appeals Council denies review or issues its own findings, her 'final decision' necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." *Id.* at 859. We consider this reasoning persuasive.

Like the Tenth Circuit, we hold that the new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision. In promulgating § 404.970(b) and § 416.1470(b), the Secretary expressly authorized claimants to submit new evidence to the Appeals Council without a "good cause" requirement. *Cf.* 42 U.S.C.

§ 405(g) (stating that the district court may order additional evidence to be taken before the Secretary, but only upon a showing "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"). The only limitations stated in these rules are that the evidence must be new and material and that it must relate to the period on or before the ALJ's decision. This regulation was promulgated by the Secretary to provide claimants a final opportunity to submit additional evidence before the Secretary's decision becomes final. Accordingly, ignoring this new evidence on judicial review would undermine the purpose of the regulation.

In addition, the regulations appear to treat the new evidence as part of the administrative record. The regulations require the Appeals Council to "evaluate the entire record including the new and material evidence submitted ... [and] review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record." § 404.970(b); *see also* § 416.1470(b). Therefore, even when the Appeals Council declines to review a decision of the ALJ, it reaches its decision only after examining the entire record, including the new evidence submitted after the ALJ's decision. Because the regulations require the Appeals Council to review the new evidence, this new evidence must be treated as part of the administrative record. Furthermore, the administrative process continues when a claimant requests the Appeals Council to review a decision of an ALJ. The regulations provide that the Secretary's decision does not become final until after the Appeals Council either rules on a case that it has accepted for review or denies review. *See* 20 C.F.R. §§ 404.955, 416.1481. Therefore, when the Appeals Council denies review after considering new evidence, the Secretary's final decision "necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." *O'Dell,* 44 F.3d at 859. Accordingly, the administrative record should contain all evidence submitted before this final decision, including the new evidence that was not before the ALJ.

In *Eads,* the Seventh Circuit was concerned that, if new evidence submitted to the Appeals Council was considered part of the administrative record for review, the court's role would be transformed "from that of a reviewing court to that of an administrative law judge." 983 F.2d at 817. It seems to us that this concern is unfounded. Our holding that evidence first submitted to the Appeals Council becomes part of the administrative record does not require the district court or this court to perform any functions performed by an ALJ. When the Appeals Council denies review after considering new evidence, we simply review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the Secretary.

### 2. The Evidence

■ The findings of the Secretary are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)). Because the district court applies the same standard of review, "our focus is not so much on the district court's ruling as it is on the administrative ruling." *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991) (quoting *Wagner v. Secretary of Health & Human Servs.,* 906 F.2d 856, 860 (2d Cir.1990)).

The definition of "disabled" is the same for purposes of receiving SSD and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The Secretary has promulgated a five-step process for evaluating disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step of this process requires the Secretary to determine whether the claimant is presently employed. If the claimant is not employed, the Secretary then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the Secretary next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the Secretary will find the claimant disabled. However, if the claimant does not have a listed impairment, the Secretary must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the Secretary determines whether the claimant is capable of performing any other work. If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the Secretary to prove in the fifth step that the claimant is capable of working. *See Carroll v. Secretary of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983).

The Secretary's regulations provide charts that are used to determine what type of work the claimant is capable of performing. *See* 20 C.F.R. § 404, Subpt. P, App. 2. These charts set forth several factors such as a claimant's age, education, and previous work experience, and indicate whether a claimant has the residual functional capacity to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. Sedentary work is defined as work that involves lifting up to ten pounds at a time and occasionally lifting and carrying light objects. 20 C.F.R. § 404.1567(a). Sedentary work also generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day. Social Security Ruling 83–10; *see also* 20 C.F.R. § 404.1567(a).

■ In the present case, the ALJ determined that, as of February 13, 1992, Perez was unable to perform her past relevant work as a sewing machine operator and did not have the residual functional capacity to perform sedentary work. The ALJ also explicitly found that, because Perez possessed the residual functional capacity to perform sedentary work prior to February 13, 1992, she was capable of working at her previous job as a sewing machine operator before February 13, 1992. Accordingly, the ALJ concluded that Perez was disabled as of Feb-

ruary 13, 1992. Perez claims that the three pieces of evidence submitted to the Appeals Council prove that she became incapable of performing sedentary work prior to February 13, 1992. We disagree.

The evidence submitted by Perez to the Appeals Council does not contradict the ALJ's finding that Perez was capable of performing sedentary work prior to February 13, 1992, and therefore the ALJ's determination is supported by substantial evidence. First, Dr. Celestin's treatment notes for the period of January 17, 1988 through March 19, 1990 are consistent with his report of May 16, 1990, and provide nothing to suggest that Perez was unable to perform sedentary work prior to February 13, 1992. Similarly, Dr. Celestin's report of April 21, 1993 is fully consistent with the ALJ's finding that Perez had the residual functional capacity to perform sedentary work prior to February 13, 1992. This report states that Perez could "continuously stand" for up to one hour, "continuously sit" for up to five hours, "alternately sit or stand at one time" for up to one hour, lift 21 to 50 pounds, and carry 11 to 20 pounds. Perez argues that this language means that she could sit for only a total of five hours per day and could stand for only a total of one hour per day. We think that Perez misinterprets the plain language of the report. The report explicitly states that Perez could "continuously" stand for up to one hour and "continuously" sit for up to five hours. This language indicates that Perez could stand for up to one hour without an interruption or a break, and that she could sit for up to five hours without an interruption or a break. Therefore, Dr. Celestin's report of April 21, 1993 does not demonstrate that Perez was incapable of performing sedentary work prior to February 13, 1992 and thus does not contradict the ALJ's finding.

Finally, Dr. Sanchez' report of April 16, 1993 does not contradict the ALJ's finding. Although the April 16th report may support Perez' contention that she was unable to perform sedentary work, it does not indicate that she was incapable of performing sedentary work prior to February 13, 1992. The report describes Perez' medical condition as it existed on the date of her last visit, February 13, 1992. It does not describe her condition prior to that time. Accordingly, the Secretary's finding that Perez was disabled as of February 13, 1992 is supported by substantial evidence.

### 3. Duty to Develop the Record

Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record. *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir.1982). This duty exists even when the claimant is represented by counsel or, as here, by a paralegal. *See Baker v. Bowen*, 886 F.2d 289, 292 n. 1 (10th Cir.1989) ("[T]he ALJ ... has the affirmative duty to fully and fairly develop the record regardless of whether the applicant is represented by an attorney or a paralegal."). The Secretary's regulations describe this duty by stating that, "[b]efore we make a determination that you are not disabled, we will develop your complete medical history ... [and] will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 404.1512(d). The regulations also state that, "[w]hen the evidence we receive from your treating physician ... or other medical source is inadequate for us to determine whether you are disabled, ... [w]e will first recontact your treating physician ... or other medical source to determine whether the additional information we need is readily available." 20 C.F.R. § 404.1512(e).

Perez claims that the ALJ failed to fully develop her medical record. Specifically, Perez argues that the ALJ failed to: (1) obtain sufficient information from Dr. Celestin; (2) obtain evidence from the physicians who ordered the CT and MRIs in 1991; and (3) seek information from Dr. Sanchez and Dr. El–Dakkak regarding the date of the onset of Perez' disability.

We think that the ALJ satisfied his duty to develop the record in this case. First, the record does not support Perez' contention that the ALJ failed to obtain sufficient evidence from Dr. Celestin. The ALJ considered the May 16, 1990 report of Dr. Celestin,

who was Perez' treating physician from January of 1988 through March of 1990. Furthermore, this report indicated that Perez was capable of performing both sedentary work and her past relevant work, and therefore the ALJ had no further obligation to obtain additional information from Dr. Celestin. *See* 20 C.F.R. § 404.1512(e).

In addition, we reject Perez' contention that the ALJ failed to develop the record by not obtaining information from the physicians who had ordered the CT of her brain and the MRIs of her spine. The ALJ stated that he considered the reports of the results of the CT and MRI tests, and that he found that they did not provide evidence demonstrating that Perez was disabled. Because there is nothing to indicate that the reports were ordered by one of Perez' treating physicians or that the reports were inconclusive, the ALJ was not obligated to request further information from the doctors who had ordered the CT and MRIs.

■ Finally, the fact that the ALJ did not specifically request information from Dr. Sanchez and Dr. El–Dakkak, who were treating physicians, regarding the onset of Perez' disability does not demonstrate a failure to develop the record. Perez argues that the ALJ should have solicited information from Dr. Sanchez and Dr. El–Dakkak regarding her medical condition at the time she was being treated by Dr. Celestin. This information would have entailed retrospective medical assessments. A treating physician's retrospective medical assessment of a patient may be probative when based upon clinically acceptable diagnostic techniques. *See Wagner*, 906 F.2d at 861. However, there was nothing presented at the hearing to indicate that retrospective assessments would have revealed any useful information or that the physicians were prepared to undertake such assessments. The ALJ already had obtained and considered reports from Dr. El–Dakkak, Dr. Sanchez, and Dr. Celestin. The ALJ had before him a complete medical history, and the evidence received from the treating physicians was adequate for him to make a determination as to disability.

## CONCLUSION

In view of the foregoing, we affirm the judgment of the district court.