**Brenda BROWN, on Behalf of Kristin BROWN, Plaintiff,**

**v.**

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

**No. 95 Civ. 0659 (DC).**

United States District Court, S.D. New York.

July 1, 1996.

Guilene Cherenfant, Bronx Legal Services, New York City, for Plaintiff.

Mary Jo White, United States Attorney for the Southern District of New York by Sapna V. Raj, Assistant U.S. Attorney, New York City, for Defendant.

## MEMORANDUM DECISION

CHIN, District Judge.

Plaintiff Brenda Brown ("Brenda"), on behalf of her daughter Kristin Brown ("Kristin"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), challenging a final determination of the Commissioner of Social Security (the "Commissioner") that Kristin is not entitled to Supplemental Security Income ("SSI"). Both parties move for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, plaintiff's motion is denied, the government's cross-motion is granted, and the Commissioner's determination is affirmed.

## BACKGROUND

### A. Procedural History

Brenda applied for SSI benefits on February 6, 1989, claiming that Kristin's asthma entitled her to disability payments under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381–1383 (1988). The claim was denied. It was subsequently readjudicated under new guidelines for evaluating children's disabilities, pursuant to the Supreme Court's decision in *Sullivan v. Zebley,* 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). The application, however, was once again denied. Brenda then requested and received a hearing before Administrative Law Judge Thomas P. Dorsey (the "ALJ"), who conducted a hearing *de novo* on December 15, 1993. On May 26, 1994, the ALJ found that Kristin was not disabled and thus not entitled to disability benefits. The Appeals Council denied the request for review on November 30, 1994, and thus the ALJ's findings and conclusions became the Commissioner's final decision. Brenda appeals to this Court for review of the Commissioner's determination.

### B. Facts

Kristin is currently a fourteen year-old girl who was diagnosed with bronchial asthma in 1986, at the age of four. (Tr. 36). Her mother and brother are asthmatic as well as her maternal and paternal aunts. (Tr. 172). Her treating physician, Dr. K. Jothianandan, has provided therapy, including injections and parenteral and steroidal medication, since 1986. (Tr. 65, 66). On September 14, 1988, Dr. Jothianandan categorized Kristin's asthma as moderate to severe and suggested that she be provided with special school transportation. (Tr. 139). He further rec-

ommended that she attend a school with fewer steps or an elevator. (Tr. 138).

Kristin testified that she attends a mainstream rather than a special education class, and that she had friends at school. (Tr. 46–48). While Kristin has never been left back, she is, however, excused from gym class because she has shortness of breath when exercising. (*Id.*).

On September 15, 1988 Kristin underwent a psychological and educational examination. The tests indicated that she was a "well-adjusted young girl" with language and perceptual-motor abilities in the average range and high average potential. (Tr. 156). Educational deficits exist, however, in reading comprehension, writing skills (manuscript), arithmetic concepts, problem solving and computational operations. Kristin's school also performed an individualized assessment on September 26, 1988. The report noted that she was medicated for asthma, with theodure and proventil, but concluded that academic remediation was not needed at the time and that no specialized equipment or adaptive devices were warranted. (Tr. 140–41).

On April 24, 1989, Dr. Jothianandan treated Kristin with two epinephrine shots for an acute episode of bronchial asthma. She was later discharged on bronchodilators and prednisone. (Tr. 170). Dr. Brea examined plaintiff at Union Hospital nine days later, on May 3, 1989. (Tr. 172). Dr. Brea found that Kristin's lungs were clear, with good aeration and no wheezes. The pulmonary function tests showed a "mild restrictive pattern." (Tr. 173). A subsequent pulmonary function test performed for the New York State Department of Social Services Office of Disability Determinations on June 1, 1989, also characterized Kristin's condition as exhibiting a "mild restrictive pattern." (Tr. 175).

Dr. Flores, a consultative examiner, performed a chest exam on November 6, 1992, revealing no deformities or retractions, good air entry, no rales or rhonchi, and good resonance on percussion. (Tr. 186). An x-ray showed the lungs to have no infiltrates, masses or pleural effusions. (Tr. 187).

In response to a request from the Office of Disability Determinations, Dr. Jothianandan submitted an account of his treatment of the plaintiff as of May 1993. (Tr. 170). In addition to the medical visits noted above, Kristin also suffered acute attacks on January 15, 1993, January 20, 1993, and May 6, 1993. In the January incidents Kristin responded to epinephrine shots and was discharged with prednisone, a proventil pump and slobid capsules. Dr. Jothianandan also noted that Kristin suffered from wheezing and difficulty in breathing in between acute attacks. (Tr. 170). Corroborating Kristin's testimony in which she alleged to have missed about 30 days of school in fifth grade and about 18 in sixth grade, the doctor stated that she was absent on several occasions. (Tr. 151, 170).

Dr. Jothianandan submitted a Child's Residual Functional Capacity Evaluation on December 14, 1993. (Tr. 200–2). He currently sees plaintiff preventively, once every three to six months. He indicated that she suffers from difficulty in breathing and coughing, as well as sporadic chest pains as a result of her asthma. In addition, she wheezes and has difficulty breathing during acute attacks. Kristin is regularly medicated with a proventil inhaler with nebulizer, a proventil pump which she uses 5 times daily, one 300mg capsule of slolid every twelve hours, and 20mg of prednisone for five days during attacks. (Tr. 195, 200). The report also noted that while Kristin has never been hospitalized she has been to the emergency room on several occasions. (Tr. 200). According to the report, as a result of her numerous absences due to asthma, Kristin demonstrated lack of concentration in school and slowness in learning and reading. (Tr. 202). Her sensory and mental functions showed mild limitations, although, she did not exhibit any developmental, physical or behavioral limitations. (*Id.*).

In 1994, Kristin suffered five additional attacks of asthma that were treated in the emergency room of Bronx–Lebanon Hospital. These attacks occurred on August 11th, August 19th, August 30th, October 4th at 12:34 p.m. and again on that day, at 10:55 p.m. (Tr. 11–20). Kristin had also been

treated in the emergency room on December 9, 1993. (Tr. 197–99).

## C. *The ALJ's Decision*

The ALJ used the four-step sequential test ("the four-step test") to determine whether a child is eligible for Title XVI benefits. (Tr. 34). 20 C.F.R. § 416.924(b). First, the ALJ found that Kristin had never engaged in "substantial gainful activity." (*Id.*). 20 C.F.R. § 416.924(c). Second, the ALJ determined that Kristin's impairment is severe, in that it imposes more than a minimal or slight limitation on her ability to function in an age-appropriate manner. (*Id.*). 20 C.F.R. § 416.924(d). Third, the ALJ concluded that the severe impairment does not meet or equal any listed impairment under 20 C.F.R. Appendix 1 of Subpart P of Part 404. (*Id.*). 20 C.F.R. § 416.924(e). Fourth, the ALJ determined that the severe impairment does not substantially reduce claimant's ability to function independently, appropriately, or effectively in an age-appropriate manner, and that the impairment is not of comparable severity to that which would disable an adult. (*Id.*). 20 C.F.R. § 416.924(f).

The ALJ based his decision on the evidence that Kristin's intelligence tests demonstrate average ability, and that there is likewise "no evidence of limitation ... in regard to concentration, persistence, and pace." (Tr. 34). He further noted that her motor functions are less than moderately limited, and that there are no limitations to her sensory and communicative functions. (*Id.*). Finally, the ALJ cited the lack of evidence of limitations of claimant's social, personal, and behavioral functions. (*Id.*).

## DISCUSSION

### A. *Determining "Disability" for Children*

A child under 18 is eligible for disability benefits if the child "suffers from any medically determinable physical or mental impairment of comparable severity," *i.e.*, comparable to what would be considered a disability for an adult. 42 U.S.C. § 1382c(a)(3)(A) (1988). The Social Security Administration defines "comparable severity" as a "physical or mental impairment[ ] [that] so limits [a child's] ability to function independently, ap-

propriately and effectively in an age-appropriate manner that [the child's] impairment[s] and the limitations resulting from it are comparable to those which would disable an adult." 20 C.F.R. § 416.924(a). To determine comparable severity in a child, the Commissioner must evaluate the claimant using the four-step test. 20 C.F.R. § 416.924(b); *see Williams ex rel. Williams v. Bowen,* 859 F.2d 255, 259 (2d Cir.1988).

### B. *Scope of Judicial Review*

██ This Court must give the Commissioner's final decision great deference, "even if [the Court] might justifiably have reached a different result upon *de novo* review." *Valente.. v. Secretary of Health & Human Servs.,* 733 F.2d 1037, 1041 (2d Cir.1984). Specifically, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (1988). Substantial evidence, however, is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citations omitted). This Court's review thus centers on whether the Commissioner's "conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Cruz v. Sullivan,* 912 F.2d 8, 11 (2d Cir.1990).

### C. *Review of the ALJ's Decision*

██ I find that the Commissioner's determination is supported by substantial evidence, and that he correctly applied the four-part test under 20 C.F.R. § 416.924. The record supports the ALJ's finding that Kristin functioned in an age-appropriate manner. First, the ALJ correctly determined that plaintiff was not engaged in substantial gainful activity. Second, the ALJ correctly found that Kristin's bronchial asthma caused her more than a minimal impairment. Third, despite plaintiff's contentions, the ALJ correctly found that Kristin's impairments did not meet or equal a listed impairment under Appendix 1 to Subpart P of Part 404 in 20 C.F.R.

Plaintiff argues that she does in fact satisfy the requirements for listings 103.03B and 103.03C(2), under Appendix 1 to Subpart P of Part 404 in 20 C.F.R. Pursuant to 103.03B, a claimant who suffers six attacks requiring physician intervention and occurring despite the prescribed treatment during a twelve month period is disabled. Plaintiff cites the attacks occurring on December 9, 1993, August 11, 1994, August 19, 1994, August 30, 1994 and two attacks occurring on October 4, 1994. (*See* Plaintiff's Initial Brief, at 6–7). Also, under § 103.03C(2), a claimant is disabled if she suffers "persistent low-grade wheezing between acute attacks ... with ... short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12–month period." Plaintiff relies on four occurrences requiring such medication: on August 11, August 21, October 4, and October 14, 1994. (*See* Plaintiff's Initial Brief at 6–7, 13–14).

█ Although these series of incidents may qualify Brenda for future benefits, they do not support the present application. In *Perez v. Chater*, 77 F.3d 41 (2d Cir.1996), the Second Circuit held that district courts may consider evidence that was added to the administrative record after the hearing before the ALJ. However, such evidence must relate "to the period on or before the ALJ's decision." *Id.* at 45. Accordingly, under *Perez,* I may only consider evidence added to the administrative record that relates to the period before May 26, 1994. Because plaintiff's argument that her asthma qualifies her for disability benefits under the listings rests on events that occurred after that date and that do not relate to the period before, it must fail. Hence, the ALJ's finding that Kristin's asthma does not meet or equal an impairment listed on Appendix 1, Subpart P of Part 404 on 20 C.F.R. is correct. 20 C.F.R. § 416.924(e). (Tr. 33, 38).

The additional evidence incorporated into the record in *Perez* is distinguishable from the evidence submitted here by plaintiff. The additional evidence in *Perez* consisted of medical reports made available or prepared after the ALJ hearing, the substance of which concerned the patient's treatment *before* the hearing. Plaintiff's evidence, on the

other hand, is based on new asthma attacks that occurred *after* the ALJ hearing. By submitting this new evidence, plaintiff was submitting, in essence, a new application for benefits arising out of a new set of facts. Plaintiff's proper course of action is to submit a new application, relying on the six new attacks. *Perez,* 77 F.3d at 45.

Finally, the ALJ correctly applied the fourth step of the four-step sequential test. The ALJ determined that the severe impairment does not substantially reduce claimant's ability to function independently, appropriately, or effectively in an age-appropriate manner, and that the impairment is not of comparable severity to that which would disable an adult. Plaintiff's academic achievement indicated that she was functioning normally in school: she had never been left back, her grades were average, and she had friends with whom she interacted regularly. (Tr. 156). Moreover, I.Q. tests showed that plaintiff exhibited average intelligence and "high average potential." (Tr. 156). Her treating physician maintains that there are no behavioral, physical or developmental limitations, and that her cognitive and sensory domains only exhibit mild limitations. (Tr. 201). For all these reasons, the ALJ's decision is supported by substantial evidence.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for judgment on the pleadings is denied. Defendant's cross-motion for judgment on the pleadings is granted. The final determination of the Commissioner is affirmed. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.