**Jerry MILANO**

v.

**Kenneth S. APFEL, Commissioner
of Social Security**

**No. 3:98CV95 AWT.**

United States District Court,
D. Connecticut.

March 7, 2000.

John Senich, Cheshire, CT, for Plaintiff.

Deidre Ann Martini, U.S. Attorney's Office, Bridgeport, CT, for Defendant.

### ENDORSEMENT ORDER

THOMPSON, District Judge.

Upon review and pursuant to 28 U.S.C. § 636(b) and Rule 2 of the Local Rules for United States Magistrate Judges (D.Conn.), Magistrate Judge Martinez's Recommended Ruling granting the plaintiff's motion for summary judgment and denying defendant's motion for order affirming the decision of the Commissioner is hereby **ACCEPTED**.

SO ORDERED.

### RECOMMENDED RULING

MARTINEZ, United States Magistrate Judge.

Pending before this court are the plaintiff's Motion for Summary Judgment (doc. # 7) and the Defendant's Motion for Order Affirming the Decision of the Commissioner (doc. # 9).

The gravamen of the plaintiff's motion is that his case should be remanded in light of new evidence which supports his claim that he is disabled. The Commissioner, on the other hand, maintains that the new evidence should not be considered and that the ALJ's decision denying the plaintiff's application for disability benefits is supported by substantial evidence.

The undersigned recommends that the plaintiff's motion (doc. # 7) be GRANTED and the defendant's motion (doc. # 9) be DENIED.

### I. STATUTORY FRAMEWORK

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. *See* 42 U.S.C. § 423(a)(1.). "Disability" is defined as an "inability to· engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1), 1382c(a)(3.)

Determining whether a claimant is disabled requires a five-step process. *See* 20 C.F.R. § 404.1520. First, the court must determine whether the claimant is currently employed. *See* 20 C.F.R. § 404.1520(b), 404.1572(b). If the claimant is currently employed, the claim is disallowed. *See* 20 C.F.R. § 404.1520(b). If the· claimant is not working, as a second step, the agency must make a finding as to the existence of a severe mental or physical impairment; if none exists, the claim is denied. *See* 20 C.F.R. 404.1520(c). Once the claimant is found to have a severe impairment, the third step is to compare the claimants impairment with those in· appendix 1 of the regulations (the "Listings"). *See* 20 C.F.R. § 404.1520(d); *Bowen v. Yuckert,*

482 U.S. 137, 141, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Balsamo v. Chater*, 142 F.3d 75, 79–80 (2d Cir.1998). If the claimant's impairment meets or equals one of the impairments in the Listings, the claimant is automatically considered disabled. *See* 20 C.F.R. § 404.1520(d); *Balsamo v. Chater*, 142 F.3d at 80. If the claimant's impairment does not meet or equal one of the listed impairments, as a fourth step, he will have to show that he cannot perform his former work. *See* 20 C.F.R. § 404.1520(e). If the claimant cannot perform his former work, he must show, as a fifth and final step, that he is prevented from doing any other work. A claimant is entitled to receive disability benefits only if he cannot perform any alternate gainful employment. *See* 20 C.F.R. § 404.1520(f).

■ The initial burden of establishing disability is on the claimant. *See* 42 U.S.C. §§ 423(d)(5), 1382c(a)(3)(G). Once the claimant demonstrates that he is incapable of performing his past work, however, the burden shifts to the Commissioner to show that the claimant has the residual functional capacity to perform other substantial gainful activity in the national economy. *See Balsamo v. Chater*, 142 F.3d at 80 (citing cases).

## II. *PROCEDURAL HISTORY*

On March 13, 1995, the plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act. He alleged that he has been unable to work since December 2, 1989.[1] (R. at 79–81). The plaintiff's application was denied on May 25, 1995. (R. at 93). On June 12, 1995, the plaintiff filed a Request for Reconsideration. (R. at 97). That was denied on June 20, 1995. (R. at 99).

On September 12, 1995, the plaintiff filed a Request for Hearing. (R. at 103).

On March 8, 1996, he asked that the hearing be postponed until he could retain an attorney. (R. at 158).

The hearing took place on June 18, 1996. The plaintiff was represented by counsel. At the hearing, the plaintiff offered various medical records and reports concerning his injuries to his back, knee, ankle, shoulder, neck and head. (R. at 135–152; 160–259). In addition, he testified on his own behalf. (R. at 35–75).

The ALJ issued his decision on July 17, 1996 and determined that the plaintiff was not disabled. (R. at 11–22).

On August 29, 1996, the plaintiff's attorney submitted to the Appeals Council additional medical reports and a request for review. (R. at 260–66). The Appeals Council denied review on November 20, 1997.

## III. *FACTS*

The plaintiff is thirty-eight years old and is currently unemployed. In 1982, the plaintiff was employed as a mechanic's helper. (R. at 37). While working at this job, the plaintiff injured his knee and ankle. (R. at 37–39). He testified that he was laid off from this job because of his injuries. (R. at 40).

Sometime after he injured his knee, the plaintiff worked at Fairchild Recreational Vehicles as a "surface technician, propane filler, [and] cap installer."[2] (R. at 40). While installing a cap, the plaintiff injured his back. (R. at 43). He injured his back a second time in 1989 when carrying a generator. (R. at 45). He reports that he was laid off from Fairchild Recreational Vehicles shortly after he sustained the second injury. (*Id.*)

Since the plaintiff lost his job at Fairchild Recreational Vehicles in 1989, he has

---

1. In his moving papers, the plaintiff states that he now seeks to amend the date of his disability to January 1, 1992. *See* doc. # 8, p. 8.

2. The plaintiff explained that as a cap installer, he installed covers on the back of pick-up trucks. (*Id.*)

worked only for two weeks in 1993.[3]

The medical records reveal that the plaintiff suffered a herniation of a disc in his lumbar spine. On April 5, 1991, Dr. Eric Katz performed a percutaneous discectomy. The plaintiff's pain and discomfort continued, however, and he experienced complications from the surgery. (R. at 137–50). He has a 12% permanent partial disability of his lumbar spine. (R. at 147). The plaintiff also has a medial meniscal tear in his right knee. He had knee surgery in 1982, but the injury necessitates further surgery. (R. at 151–52; 160–71).

In addition to the medical records pertaining to his knee and back, the plaintiff submitted records from Dr. Sbriglio, his treating psychiatrist. In a report dated April 9, 1996, Dr. Sbriglio opined,

> [t]his plaintiff has a history of increasing depressive symptoms for over the past 1 year. His symptoms are characterized by—crying spells, poor concentration, low energy, poor sleep (early and middle insomnia for past 4 years; sleeps only 4–5 h/night), increased appetite (30[lb.] weight gain over past 7 months), decreased interests (not biking, not building models, gave away collection, too impatient), loss of interest in sex, irritable, short-fused, episodic chest pains and headaches. He has a long history of temper problems which have been in good control until depressive symptoms began. A major stressor was the death of a close nephew 2/22/95. The patient admits he had suicidal ideation following his death.
>
> *Hallucinations:* The patient complains of recent visual and auditory hallucinations—while fully alert or sleepy—sees images of arms and shapes coming out

of walls, see people who aren't there. He has begun to strike out at shadows in the night. He also hears occasional voices calling out his name. He is fearful he may hurt his wife who is 7 months pregnant.

(R. at 255–56).

At the hearing, the plaintiff testified about his hallucinations. He also reported that he has problems controlling his temper. For example, he said that he was afraid to drive because "if people cut me off, I get nervous, I get anxiety, I get pain in my chest, I want to go out and just choke them and yell at them . . . ." (R. at 71). He testified that he had these symptoms "for years, but . . . was afraid to say anything. I was afraid to tell anybody thinking that they would laugh at me, put me away or think that I was crazy. I'm talking more than 12 years, 15 years." (R. at 70).

## IV. *FINDINGS BY THE ALJ*

Following the five step evaluation process, the ALJ determined that the plaintiff did not suffer a disability within the meaning of the Social Security Act.

The ALJ found that the plaintiff had degenerative disc disease of the lumbosacral spine and a torn medial meniscus in his right knee. Although the ALJ found that the plaintiff's persistent pain limited his exertional abilities, he also found that the record was devoid of evidence that his injuries met the requirements in the Listing.[4]

The ALJ further found that the plaintiff did not establish that he suffered from an

---

**3.** With regard to the plaintiff's work history, the ALJ found that "[a]lthough he stopped working on December 2, 1989, he returned to work at a department store in 1993 . . . . He quit this job after only three weeks because he was unable to lift . . . . Therefore, he last engaged in substantial gainful activity on December 2, 1989 and the work activity in 1993

constituted an unsuccessful work attempt because it lasted less than three months and required exertion in excess of Mr. Milano's functional capacity." (R. at 14–15).

**4.** The plaintiff does not challenge this portion of the ALJ's findings.

affective disorder as defined in § 12.04 of the Listing.[5] He reasoned,

> one year after he applied for disability benefits and the expiration of his insured status, Mr. Milano was diagnosed with major depression, single episode in April 9, 1996. (Exhibit 40). Psychiatric examiner Robert Sbriglio, M.D., reported that Mr. Milano reported experiencing increasing depressive symptoms only during the past year (Id.), which at best would be April 9, 1995. However, he did not allege any psychiatric condition on April 17, 1995 when he applied for disability benefits and he responded negatively to such questions in his Reconsideration Disability Report on June 12, 1995. (See Exhibits 1, 10 and 11).

5. Section 12.04 (20 C.F.R. pt. 404, Subpt. P, App.1 (1998)) of the social security regulations. This section provides the basis for a finding of disability resulting from an affective disorder such as that claimed by the plaintiff. Section 12.04 provides:
   *Affective Disorders:* Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
   A. Medically documented persistence, either continuous or intermittent, of one of the following:
   1. Depressive syndrome characterized by at least four of the following:
   a. Anhedonia or pervasive loss of interest in almost all activities; or
   b. Appetite disturbance with change in weight; or
   c. Sleep disturbance; or
   d. Psychomotor agitation or retardation; or
   e. Decreased energy; or
   f. Feelings of guilt or worthlessness; or
   g. Difficulty concentrating or thinking; or
   h. Thoughts of suicide; or
   i. Hallucinations, delusions or paranoid thinking; or
   2. Manic syndrome characterized by at least three of the following:
   a. Hyperactivity; or
   b. Pressure of speech; or
   c. Flight of ideas; or

Therefore, since there is no basis of establishing an onset date of his major depression prior to the expiration of his insured status, it is not material to the discussion of Mr. Milano's disability or whether he currently meets or equals [the requirements of the Listing].

(R. at 15).

## V. *NEW EVIDENCE SUBMITTED TO THE APPEALS COUNCIL*

On January 23, 1997, the plaintiff's attorney submitted additional evidence to the Appeals Council concerning the plaintiff's psychiatric condition.[6]

In a letter dated September 12, 1996, Dr. Sbriglio wrote,

> [a]lthough the current focus of treatment has been Mr. Milano's depression,

   d. Inflated self-esteem; or
   e. Decreased need for sleep; or
   f. Easy distractibility; or
   g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
   h. Hallucinations, delusions or paranoid thinking; or
   3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
   AND
   B. Resulting in at least two of the following:
   1. Marked restriction of activities of daily living; or
   2. Marked difficulties in maintaining social functioning; or
   3. Deficiencies in concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
   4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

6. The plaintiff also submitted records pertaining to his knee. However, the plaintiff's request for a remand concerns only the psychiatric condition; therefore, the reports regarding his knee condition will not be discussed.

it seems he has a long standing history of Attention–Deficit/Hyperactivity Disorder (ADHD) dating back to early childhood. According to Mr. Milano, he has had testing for this condition in the past (grade school or high school) but has had no treatment. This is a serious condition causing difficulties in social functioning, interpersonal problems, restlessness, low frustration tolerance, temper problems, irritable mood, deficiencies in concentration, difficulties in completing tasks in a timely manner (in work settings and elsewhere), difficulty with reading and memory tasks, difficulty with planning and organizing, difficulty with mathematics and calculations. Mr. Milano has difficulty with household paperwork and managing finances so his wife handles these responsibilities.

In many individuals, the condition of ADHD can cause secondary depressive symptoms because ADHD symptoms (interpersonal and cognitive deficits) leave individuals feeling frustrated and discouraged. If individuals cannot adapt adequately, they can develop more severe depressive symptoms. Mr. Milano's long-standing ADHD combined with his physical problems (chronic pain and physical disability) have created significant chronic disability.

I strongly recommend that Mr. Milano's old psychological testing records be obtained and reviewed. He should also get updated psychological testing to document current ADHD symptoms. Mr. Milano's long-standing history of ADHD symptoms should be considered part of his disability.

The plaintiff also submitted a letter from Dr. Sbriglio dated January 8, 1997 that states,

[b]ased on reasonable medical probability, Mr. Milano does meet the criteria for affective disorders as set forth in Section 12.04 of the Social Security Statutes. The onset of his serious depression occurred sometime in 1991 or 1992 when he became unemployed and noted the progressive onset of depressive symptoms. His long-standing history of Attention–Deficit/Hyperactivity Disorder (ADHD) dating back to early childhood have caused a number of difficulties including depressive symptoms.

(R. at 264).

## VI. *DISCUSSION*

The plaintiff asserts that his case should be remanded so that the ALJ may consider the new medical reports relating to his claimed psychiatric disability. The court agrees that a remand is appropriate.

As a threshold matter, the court addresses the government's assertion that the plaintiff must demonstrate good cause for the late submission of the additional records. The government, in making its argument that the plaintiff must establish good cause for his failure to submit the new evidence before the ALJ, relies on *Schaal v. Apfel,* 134 F.3d 496 (2d Cir.1998). The government's reliance on this case, however, is misplaced.

It is well established that a plaintiff ordinarily must demonstrate good cause when he presents new medical evidence in support of his claim for the first time on appeal to the district court. *See id. Schaal* does not apply here, however, where the plaintiff submitted the new reports to the Appeals Council.

In *Perez v. Chater,* the Second Circuit held that "new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." 77 F.3d at 45. Where the new reports are a part of the administrative record, the rule requiring a showing of good cause requirement is inapplicable.

In promulgating § 404.970(b) and § 416.1470(b), the Secretary expressly authorized plaintiffs to submit new evidence to the Appeals Council without a "good cause" requirement. *Cf.* 42

U.S.C. § 405(g) (stating that the district court may order additional evidence to be taken before the Secretary, but only upon a showing "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.") The only limitations stated in these rules are that the evidence must be [1] new and [2] material and [3] that it must relate to the period on or before the ALJ's decision. This regulation was promulgated by the Secretary to provide plaintiffs a final opportunity to submit additional evidence before the Secretary's decision became final. Accordingly, ignoring this new evidence on judicial review would undermine the purpose of the regulation.

*Perez v. Chater,* 77 F.3d 41, 45 (2d Cir. 1996).

The court now turns to the merits of the plaintiff's motion to remand. In order to prevail on a motion for a remand based on new evidence, the plaintiff must demonstrate that the evidence is "new," "material" and that it "relate[s] to the period on or before the ALJ's decision." *Perez v. Chater,* 77 F.3d at 45. "New" evidence is simply that evidence which has not been considered previously during the administrative process. *See Bomes v. Schweiker,* 544 F.Supp. 72, 75 (D.Mass.1982); *Szubak v. Secretary of Health and Human Servs.,* 745 F.2d 831, 833 (3d Cir.1984). Moreover, to be considered "new" evidence, the medical reports may not be cumulative to those already contained in the record. *See Tirado v. Bowen,* 842 F.2d at 595.

■ The report at issue here is clearly "new" evidence. The record was practically devoid of medical evidence concerning the plaintiff's psychiatric condition. Indeed, the ALJ noted the lack of such evidence. In his decision, the ALJ commented that "there is no basis of establishing an onset date of his major depression prior to the expiration of his insured status...."

Next, the court must determine whether the newly submitted reports are material. Medical evidence is material if it is

both relevant to the claimant's condition during the time period for which benefits were denied and probative.... The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide the claimant's application differently....

*Tirado v. Bowen,* 842 F.2d at 597.

The Commissioner maintains that the report is not material because there are no grounds to support a finding that the new evidence would have influenced the ALJ to grant the plaintiff's application. This is so, it argues, because none of the other doctors who treated the plaintiff noted depressive symptoms and their silence on the issue is probative. *See* doc. # 9, p. 10 (citing *Jones v. Sullivan,* 949 F.2d 57, 59–60 (2d Cir.1991)). In addition, the government claims that neither the ALJ nor the Appeals Council would be bound by Dr. Sbriglio's retrospective opinion because the record lacks contemporaneous time records to support his opinion. *See* doc. # 9, p. 11 (citing *Dousewicz v. Harris,* 646 F.2d 771, 774 (2d Cir.1981)).

The government's arguments are unavailing. Neither case it cites stands for the propositions for which they are cited. In that portion of *Jones v. Sullivan* cited in its brief, the Second Circuit discussed the "treating physician" rule and held that the district court must make the factual findings as to whether new evidence should be considered before a court of appeals can pass upon the question of whether a remand is warranted. *Jones,* 949 F.2d at 59–60. Second, the Commissioner's reliance on *Dousewicz* is misplaced. The case does not support the Commissioner's position; in fact, it supports the plaintiff's position. In *Dousewicz,* the Second Circuit held that "[a] diagnosis of a claimant's condition may properly be made even several years after the actual onset of the impairment."

*Dousewicz,* 646 F.2d at 774. (Citation omitted).

Considering the entire medical record, in conjunction with the two additional reports, the court concludes that remand is proper. There is a reasonable possibility that the ALJ may reach a different conclusion in light of the additional reports from Dr. Sbriglio.

Upon remand, the Commissioner is directed to evaluate the evidence, including the two new reports, to determine whether the plaintiff's medical condition constitutes a disability within the meaning of the Social Security Act.

## VII. *CONCLUSION*

For the foregoing reasons, the court recommends that the Plaintiff's Motion for Summary Judgment (doc. # 8) be GRANTED and the Defendant's Motion for Order Affirming the Decision of the Commissioner (doc. # 11) be DENIED.

Any party may seek the district court's review of this recommendation. *See* 28 U.S.C. § 636(b) (written objections to proposed findings and recommendations must be filed within ten days after service of same); Fed.R.Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992) (failure to file timely objections to Magistrate Judge's recommended ruling waives further review of the ruling).

February 15, 2000.