**Patricia McINTIRE, Plaintiff,**

v.

**Michael J. ASTRUE, Defendant.**

**No. 3:07cv1534 (SRU)**

United States District Court,
D. Connecticut.

Sept. 9, 2010.

John P. Spilka, Connecticut Legal Services, Inc., New Britain, CT, Thomas M. Ford, Connecticut Legal Services, Waterbury, CT, for Plaintiff.

Ann M. Nevins, U.S. Attorney's Office, Bridgeport, CT, for Defendant.

## *ORDER OF REMAND*

STEFAN R. UNDERHILL, District Judge.

Patricia McIntire brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for *continuing disability benefits under Titles* II and XVI of the Act, 42 U.S.C. §§ 423(f), 1382c(a)(3)(A). McIntire moves for remand[1] or reversal, arguing that the deci-

---

**1.** In her civil action appealing the Commis- sioner's final decision, McIntire first moved

sion of the Administrative Law Judge ("ALJ") was not supported by substantial evidence and was contrary to the applicable legal standards. (Plaintiff's Mem. Supp. of Mot. for Order Reversing the Decision of the Commissioner, doc. # 31, hereinafter "Pl.'s Mem.") The Commissioner has cross-moved for an order affirming the decision to deny McIntire benefits. (Def.'s Mot. for Order Affirming the Decision of the Commissioner, doc. # 32, hereinafter, "Def. Mot.") For the reasons set forth below, McIntire's motion is GRANTED and the Commissioner's motion is DENIED.

## I. Background

### A. *Administrative Proceedings*

McIntire filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on March 14, 2002. After a series of decisions and requests for reconsideration, it was determined that McIntire's disability was ongoing from July 1, 2000 with no cessation date and that she was eligible for SSI beginning March 1, 2002. (Answer, doc. # 3, Transcript of Record 52, 53, 520–35, hereinafter "Tr.") On June 17, 2004, McIntire was notified that her disability ceased as of June 1, 2004, due to medical improvements. (Tr. 56, 57, 592–606.) McIntire requested reconsideration, which was denied, and requested a hearing. (Tr. 84, 86–99, 102.) On May 10, 2006, Administrative Law Judge ("ALJ") Deirdre Horton held a hearing at which McIntire, who was represented by counsel, appeared and testified. (Tr. 1735–97.)

On September 6, 2006, the ALJ issued a decision finding that McIntire's disability ceased as of June 1, 2004, due to medical improvements. (Tr. 29–42.) The ALJ's decision addressed whether McIntire's disability had ended under sections 223(f) and 1614(a)(3)(A) of the Social Security Act. (Tr. 31.) The ALJ's decision found McIntire capable of sedentary work. (Tr. 41.) In making that finding, the ALJ assigned controlling weight to the July 5, 2006 opinion of Dr. William Delaney, McIntire's treating physician, "as to the claimant's physical limitations." (Tr. 39, 1657.) The ALJ gave the opinion controlling weight after finding it was "consistent with the overall evidence of record including the lack of ongoing treatment and the claimant's demonstrated ability to engage in work activity at the medium exertional level." (Tr. 39.) McIntire appealed the decision to the Appeals Council.

In conjunction with her appeal, McIntire submitted additional medical evidence (Tr. 1688–1716) and a memorandum from McIntire's attorney containing a report from Delaney (Tr. 1717–24). The Appeals Council received this evidence and made it part of the record.[2] (Tr. 9.) The ALJ's decision became the final decision of the Commissioner on August 15, 2007, when the Appeals Council denied review. (Tr. 10–14.) McIntire now seeks judicial review of the ALJ's decision as the final decision of the Commissioner.

### B. *Relevant Facts*

A full medical history is not necessary. This section addresses the facts relevant to

for remand (doc. # 12) under sentence six of 42 U.S.C. § 405(g). Judge William I. Garfinkel issued a Recommended Ruling denying the remand on July 7, 2008 (doc. # 15), and a Recommended Ruling After Reconsideration on September 3, 2008 (doc. # 19) (collectively, the "Recommended Ruling"), which this court adopted by order dated June 5, 2009

(doc. # 28). The remand now sought is based on grounds other than sentence six.

**2.** Under Second Circuit law, that evidence is included in the administrative record before the court. *See Perez v. Chater,* 77 F.3d 41, 45 (2d Cir.1996).

McIntire's appeal and the basis for her motion for remand or reversal.

1. *Injury and Ensuing Disability*

McIntire suffered injury on July 2, 2000, when the car she was operating collided head-on with a tree. (Tr. 320.) Among her injuries was severe damage to her right ankle, which required an emergency operation. (Tr. 329–31, 342.) The injuries to her ankle were a major component of her disability determination on July 26, 2002. As the ALJ acknowledged, on that date McIntire was disabled due to the following medically determinable impairments: status post right ankle and foot fracture with open reduction internal fixation and recurrent osteomyelitis; asthma; depression; borderline personality disorder and poly-substance use disorder. (Tr. 33.) Also in 2002, a doctor recommended surgical fusion of McIntire's subtalar joint.[3] (Tr. 516.)

The ALJ identified July 26, 2002 as the comparison point date and the medical decision on that date as the comparison point decision. (Tr. 33, 75–76.)

2. *Evidence of McIntire's Condition Around June 1, 2004*

The ALJ considered June 1, 2004 to be the disability cessation date. (Tr. 42.) On March 3, 2004, McIntire underwent a physical exam. (Tr. 615–16.) On that date, her diagnoses were listed as: (1) substance abuse; (2) asthma; (3) hypertension; (4) depression; (5) dyslipidemia/anemia; and (6) health maintenance; but her foot problems were absent from the list. (Tr. 616.)

The Commissioner now notes that during examinations with her treating psychiatrists, McIntire was observed to have a normal gait and station on June 15, 2004 (Tr. 1562); August 2, 2004 (Tr. 1574); September 13, 2004 (Tr. 1578); December 15,

2004 (Tr. 1591); and January 27, 2005 (Tr. 1596 ("steady")); October 12, 2005 (Tr. 1628); November 30, 2005 (Tr. 1632); January 11, 2006 (Tr. 1640); March 8, 2006 (Tr. 1645). No observation was noted on July 12, 2004 (Tr. 1567); October 12, 2004 (Tr. 1583); May 16, 2005 (Tr. 1613); or July 20, 2005 (Tr. 1621).

McIntire had a physical exam by a doctor with Connecticut Disability Determination Services on October 22, 2004. (Tr. 801–02). She complained of persistent right foot pain, exacerbated immediately by walking or by constant standing in excess of twenty minutes. (Tr. 801.) McIntire reported walking with a limp; she did not use a cane, and sitting did not bother her. (*Id.*) Additionally, she suffered from major depression. (*Id.*) On physical examination, her extremities were noted to be free of edema, clubbing, or cyanosis. (*Id.*) There was no evidence of inflammatory arthropathy, and no effusion, redness, or swelling. (*Id.*) Her right calf displayed a two centimeter atrophy compared to her left calf, but the motor strength in both extremities was equal. (Tr. 801–02.) The range of motion on her right foot was limited to fifteen degrees on active dorsiflexion, thirty degrees on active plantar flexion, eighteen to twenty degrees on passive dorsiflexion, and to thirty-five to forty degrees on passive plantar flexion. (Tr. 802.) There was no reproducible pain with active or passive range of motion, and no palpable tenderness or erythema around the right ankle. (*Id.*) Her gait was notable for a slight limp, but she did not require the use of an assistive device, and her pedal pulses were intact. (*Id.*) Her dexterity and balance were well-preserved. (*Id.*) The doctor's assessment was that McIntire was at maximal medical improvement having deferred repeat surgery for fusion of the metatarsal

---

3. The surgery was not scheduled until September 14, 2006. (Tr. 20.)

joints. (*Id.*) While McIntire's right lower extremity was slightly limited in range of motion, her asthma and history of bipolar illness appeared stable. (*Id.*) He stated that McIntire had "recovered to state of maximal medical improvement." (Tr. 801–02.) The doctor did not reference any current radiologic information in creating his report.

On October 27, 2004, DDS medical expert Dr. Golkar Firooz analyzed McIntire's case and assessed her physical residual functional capacity. (Tr. 803–11.) He stated that "[r]ecent medical evidence including recent [clinical exam] shows [fusion] completely healed and patient fully weight bearing on her [right lower extremity] with evidence of mod[erate] muscle atrophy in the ext[remity]. Gait fairly normal without use of any assist[ive] device." (Tr. 804). He found McIntire was capable of lifting twenty pounds occasionally, lifting ten pounds frequently, standing and/or walking approximately six hours in an eight-hour workday, sitting approximately six hours in an eight-hour workday, and an unlimited ability to push and/or pull with all extremities, including the operation of hand and/or foot controls. (*Id.*) His analysis and assessment were completed without reference to current radiological evidence. His case analysis began with the observation that McIntire's case ceased June 16, 2004 for failure "to cooperate" and to provide medical information although McIntire had later begun to cooperate by submitting to medical evaluation. (Tr. 57, 77, 811.)

In October 2005, McIntire had osteomyelitis and reactive arthritis. (Tr. 1045.) An emergency room physician gave her a splint, crutches, and told her to "follow up with the orthopedic clinic as soon as possible and stay home from work for 2 days if she is unable to keep her foot elevated." (*Id.*)

McIntire worked full-time as a home health aid between June 2005 and February 2006, although the evidence suggests she had frequent absences. (Tr. 1660.) After reflecting on McIntire's work history at the close of the hearing, the ALJ stated, "I don't think [medical evidence is] going to make any difference." (Tr. 1796.)

### 3. *Evidence Not Before the ALJ*

On appeal from the ALJ's decision denying benefits, McIntire submitted to the Appeals Council two important pieces of evidence that were then included in the record. First, a radiological report of an MRI McIntire underwent on July 10, 2006,[4] which revealed a fracture of McIntire's ankle that had remained chronically unhealed between 2002 and 2006. (Tr. 1727–28.) Second, she submitted an opinion by Delaney, dated July 25, 2007. Upon receiving the July 10, 2006 MRI results and learning that the fractured ankle remained unhealed through 2006, Delaney authored a revised opinion repudiating his prior opinion that McIntire could sit, stand, and walk consistent with the requirements of a sedentary job.[5] This opinion gives an RFC for July 25, 2007 indicat-

---

4. In my prior ruling in this case, accepting the Recommended Ruling, I stated: "Although the new radiological evidence was not before the ALJ at the May 2006 hearing in McIntire's case, by the time the ALJ rendered her decision in September 2006, she had considered the objective medical radiological evidence indicating McIntire's ankle was unhealed." (Order, doc. #28, at 11.) That statement was incorrect; the administrative record shows that the ALJ never saw the report.

5. As McIntire explains, clinic notes from Delaney's workplace, Seifert & Ford, never mention the calcaneal fracture, but do mention neuropathic arthropathy or neuropathic joint. (Pl. Mem. at 7.)

ing McIntire was incapable of performing even sedentary work. (Tr. 1717–24.)

Thus, the radiological evidence before the ALJ, which was resubmitted to the Appeals Council included:

- February 21, 2002: unhealed calcaneus (Tr. 1029, 1732)
- March 28, 2002: bony destruction, "neuropathic arthropathy"[6] (Tr. 736, 1037, 1731)
- May 24, 2002: destruction, fragmentation of calcaneus (Tr. 740, 1036, 1730)
- October 11, 2005: no fracture (Tr. 1030, 1729)

The radiological reports through May 24, 2002, included comparisons to prior reports and found the appearance unchanged. The report of July 10, 2006, submitted to the Appeals Council but not to the ALJ, includes the same assessment. The only report that does not show a fracture is October 11, 2005. The ALJ relied on the October 11, 2005 report to conclude that McIntire's ankle suffered only arthritis (rather than a fracture) at the time of the hearing. (Tr. 38) Rather than analyze whether the report was anomalous, the Appeals Council simply accepted the ALJ's determination, which was made without the benefit of the July 10, 2006 report.

## II. Standard of Review

This court's review of the Commissioner's decision is limited, as it may be set aside only due to legal error or if it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g) (providing that the Commissioner's factual findings are conclusive if supported by substantial evidence); *Yancey v. Apfel,* 145 F.3d 106, 111 (2d Cir.1998). "Substantial evidence" is less than a preponderance but "more than a

mere scintilla" and as much as "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996). "Thus, as a general matter, the reviewing court is limited to a fairly deferential standard." *Gonzalez ex rel. Guzman v. Commissioner,* 360 Fed.Appx. 240, 242 (2d Cir.2010) (summary order) (*citing Clark v. Comm'r of Soc. Sec.,* 143 F.3d 115, 118 (2d Cir. 1998)). If the decision of the ALJ evinces legal error or is unsupported by substantial evidence, the Act provides that the "Court shall have the power to enter … a judgment … reversing a decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## III. Discussion

Sentence four remand is appropriate due to two errors of law committed by the Appeals Council. The Second Circuit has stated that "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987). The same risk exists where there is a reasonable basis for doubt whether the Appeals Council, which also speaks for the Commissioner, applied correct legal principles. If the court identifies a legal error, the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary

---

**6.** "Neuropathic arthropathy" is progressive degeneration of a weight bearing joint, a process marked by bony destruction, bone resorption, and eventual deformity.

to allow the ALJ to develop a full and fair record or to explain his or her reasoning.

A. *First Error of Law: Failure of the Appeals Council to Apply the Treating Physician Rule*

■ The first error of law relates to both DIB and SSI benefit eligibility. The Regulations provide: "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). In this case, however, the Commissioner failed to give good reasons for the weight it gave to the second opinion of Delaney, McIntire's treating physician.

Even if the ALJ's decision and analysis regarding Delaney's first opinion were proper, the Commissioner failed to comply with the regulations because the Appeals Council failed to meet its burden of providing plaintiff with good reasons for the lack of weight attributed to the treating physician's second opinion. Although there appeared to be some confusion about the relevant time period for both McIntire's SSI and DIB claims and when evidence from a time period was no longer relevant, a treating physician's "retrospective opinion is still entitled to significant weight." *Chavis v. Astrue,* No. 5:07–cv–0018, 2010 WL 624039, *9 (N.D.N.Y. Feb. 18, 2010), *citing Dousewicz v. Harris,* 646 F.2d 771, 774 (2d Cir.1981).

1. *The Treating Physician Rule Applies Here*

The Commissioner argues against the application of the treating physician rule to the Appeals Council's decision. He argues that the rule should be applied if the Appeals Council accepts review, but that an independent application of the rule by the Appeals Council is unnecessary if the ALJ applied the rule and the Appeals Council, by denying review, adopts the ALJ's opinion for the Commissioner. That argument is not persuasive.

It is true that by denying review the Appeals Council adopts the opinion of the ALJ and makes it the final decision of the Commissioner. That fact, however, does not render unreviewable the Appeals Council's decision to deny review. Such a rule would render meaningless the provision allowing a claimant to submit "new and material" evidence to the Appeals Council. 20 C.F.R. §§ 404.970(b), 416.1470(b).[7] Such evidence becomes part of the administrative record on appeal to the federal courts when the Appeals Council denies review, *see Perez,* 77 F.3d at 45, and must be considered by the district court when it reviews the Commissioner's decision.

The Commissioner's proposed rule, that the Appeals Council need not give reasons for the weight it gives a treating physician's opinion, is sensible if the claimant has submitted no additional evidence for the Appeals Council's review or if the evidence the claimant submits is fully consistent with and duplicative of the evidence that was before the ALJ when she rendered her opinion (i.e., the evidence the claimant submits is not "new and material"). In such a scenario, denying review does not fail to provide good reasons because the Appeals Council has adopted the reasons given by the ALJ, which are fully

---

7. Compare the language of 20 C.F.R. § 404.970(b) with §§ 416.1470(b) and 416.1476(b)(2). The latter pair of provisions, regarding SSI benefits, differentiate evidence considered by the Appeals Council in "decisions based on an application for benefits" from the evidence considered in "decisions other than those based on an application for benefits." *See* 20 C.F.R. §§ 416.1470(b), 416.1476(b)(2). The former provision, regarding DIB benefits, has a single standard for what evidence the Appeals Council will consider.

applicable to the record as it stands before the Appeals Council. *See Perez*, 77 F.3d at 45 (if "the Appeals Council denies review after considering new evidence, the [Commissioner]'s final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence").

When the claimant submits new evidence of the treating physician that is material and inconsistent with prior evidence, the ALJ's explanation for weight given the prior treating physician opinion may be insufficient to explain the new evidence. *See Morse v. Astrue*, No. 7:06–CV–1417, 2009 WL 1322301, \*5 (N.D.N.Y. May 12, 2009) (explaining that in light of evidence submitted only to Appeals Council, ALJ's analysis of treating physician opinion was insufficient to satisfy regulations and Appeals Council also had to comply with regulations); *Bido v. Astrue*, No. 07 Civ. 5844, 2009 WL 2222738, \*2 (S.D.N.Y. July 21, 2009) (noting "potentially contradictory evidence in the record" regarding the plaintiff's health and stating that "this Court cannot reconcile this evidence") (alterations removed).

In such a case, denying review *fails to provide good reasons* for weight afforded (i.e., none) to the new evidence (e.g., inconsistent treating physician opinion). *See Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir.1998). The Commissioner argues that *Schaal* is inapplicable because the Court's emphasis was on the unclear standard the ALJ applied when considering the treating physician's opinion. Although that issue certainly provided some basis for the Court's decision to remand the case, its analysis did not stop with the ALJ's opinion. Rather, the Court continued its analysis by stating that, "by the time that the Commissioner's decision became final upon denial of review by the Appeals Council, the only two reasons indicated by the ALJ for discounting [the treating physician's]

opinion were no longer valid" because of additional evidence submitted by the claimant to the Appeals Council. *Id.* Thus, *Schaal* stands for the proposition that the duty imposed on the Commissioner by the regulations to explain the weight given the treating physician's opinion extends to the Appeals Council review stage if the evidence submitted to the Appeals Council requires further explanation. *See also Shrack v. Astrue*, 608 F.Supp.2d 297, 302 (D.Conn.2009) ("Importantly, the treating physician rule applies to the Appeals Council when the new evidence at issue reflects the findings and opinions of a treating physician."), *citing Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999); *Morse*, 2009 WL 1322301 at \*5.

Although the Commissioner argues that *Shrack* was wrongly decided, the decision's analysis is persuasive. The Court in *Shrack* noted that the Appeals Council "did not specifically address" any of the hundreds of pages of "additional medical evidence" the plaintiff submitted when it denied review. The Appeals Council's statement that "[w]e found no reason under our rules to review the Administrative Law Judge's decision" was insufficient to satisfy the regulation's requirement that it "consider new and material evidence" and that the Appeals Council "must give good reasons for the weight it assigns to a plaintiff's treating physician's opinion." *Shrack*, 608 F.Supp.2d at 302.

Likewise, in this case, McIntire submitted additional evidence on appeal, and the Appeals Council stated only that "we considered the contentions raised in the memorandum from your attorney . . . as well as the additional evidence . . . but concluded that neither the contentions nor the additional evidence provide a basis for changing the Administrative Law Judge['s] decision." (Tr. 10–11.) That statement does not satisfy the regulations' requirement that the Commissioner give good reasons

for the weight given the treating physician's opinion; obviously, the ALJ could not explain the rejection of the treating physician's opinion first submitted during appeal, and the Appeals Council failed to offer any explanation for its rejection of that opinion.

Important in each of the decisions cited above was the fact that the additional evidence received by the Appeals Council required further explanation and an application of the treating physician rule on appeal. Although it is not the province of the district court to weigh the evidence, applying the treating physician rule to the Commissioner's decision requires a finding that the new evidence McIntire submitted was "new and material," or inconsistent with earlier evidence, and required application of the rule to the second opinion. Without weighing the evidence, I conclude that the evidence submitted by McIntire was sufficiently new, inconsistent, and material to require further explanation by the Commissioner at the Appeals Council stage of review.

2. *The Evidence was New to the Appeals Council, Material, and Merited Application of the Rule*

■■■ The evidence submitted to the Appeals Council was new and material.[8]

Under the regulations, 20 C.F.R. §§ 404.970(b), 416.1470(b), a plaintiff is expressly authorized to submit new evidence to the Appeals Council without demonstrating good cause. The Appeals Council must consider new and material evidence if it relates to the relevant time period.[9] *See Perez,* 77 F.3d at 45. When it fails to do so, the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence. *See Milano v. Apfel,* 98 F.Supp.2d 209, 216 (D.Conn.2000).

■■■ New evidence is any evidence that has not been considered previously during the administrative process. *Del-Valle v. Apfel,* 97 F.Supp.2d 215, 222 (D.Conn.1999). Evidence that is cumulative to that already contained in the record prior to the ALJ decision is, by definition, not "new" and need not be considered. *See id.* Evidence is material if it is (i) relevant to the time period for which benefits have been denied and (ii) probative, meaning it provides a reasonable probability that the new evidence would have influenced the Commissioner to decide the claimant's application differently. *See Tirado v. Bowen,* 842 F.2d 595, 597 (2d Cir.

8. It is important to note that the requirement for "new and material" evidence described by the Regulations in the cited section is distinct from the "new evidence which is material" described under sentence six remand, 42 U.S.C. § 405(g), most notably because the contemplated evidence is "new" at a different time in the course of the administrative proceeding and judicial review.

9. Regarding all DIB cases, 20 C.F.R. § 404.970(b) states: "If new and material evidence is submitted, the Appeals Council shall consider the additional evidence *only where it relates to the period on or before the date of the administrative law judge hearing decision.* The Appeals Council shall evaluate the entire record including the new and material evi-

dence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record."

Regarding SSI cessation cases, 20 C.F.R. § 416.1470(b), states: "In reviewing decisions other than those based on an application for benefits, the Appeals Council *shall evaluate the entire record including any new and material evidence submitted.* It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record."

1988); *Webb v. Apfel,* No. 98 Civ. 791, 2000 WL 1269733, *14 (W.D.N.Y. Feb. 8, 2000).

The interrelated evidence at issue here includes the July 10, 2006 radiological report showing a "chronic, ununited fracture" and Delaney's second opinion, based on that report, which gave a RFC indicating disability.

The evidence was "new" to the Appeals Council. The July 10, 2006 radiological report referred to an "unchanged" fracture and contradicted an intermediate radiological report from May 2005 showing no fracture. Delaney's second opinion relies on the new radiological evidence and repudiates his first opinion, on which the ALJ relied and to which she gave controlling weight. Neither can the July 10, 2006 report fairly be considered cumulative of the evidence in the record before the ALJ. *See Richardson v. Apfel,* 44 F.Supp.2d 556, 562 n. 3 (S.D.N.Y.1999); *Salmini v. Astrue,* No. 06 Civ. 458, 2009 WL 1794741, *10 (N.D.N.Y. June 23, 2009) ("Evidence is 'new' if it is not merely cumulative of what is already in the record").

The evidence is also material, i.e., relevant and probative. Delaney's opinion is relevant to both the SSI and DIB claims. The relevant time period for the SSI claim, as explained below in greater detail, began on the comparison point date of July 26, 2002 and continued through the date of the Appeals Council's decision on August 15, 2007. The relevant time period for the DIB claim also began on the comparison point date and continued only through the date of the ALJ's decision on September 6, 2006. Delaney's second opinion concerns the relevant time periods: regarding SSI, it was created prior to the Appeals Council's decision; regarding DIB, it states by its terms that it refers to the period prior to the ALJ decision and it relies on clinical findings that predate the ALJ opinion. *See Shrack,* 608 F.Supp.2d at 302 n. 2

(noting that, although the treating physician's opinion was dated after the ALJ's decision, it relied on notes composed during the relevant time period, and ordered that to "the extent that the findings and conclusions discussed in [the treating physician's] letter can be attributed to his observations during the time period at issue, that letter is new and material evidence and should be addressed on remand"). The opinion is relevant to both types of benefits because it relies on the July 10, 2006 radiological report, which was created during the relevant time period for both benefits, and by its own terms addresses that time period.

The opinion is probative of the SSI claim because, as explained below, a claimant can reestablish eligibility under SSI by showing an increase in symptoms without having to file a new application. The opinion is probative of the of the DIB claim for two reasons. First, the ALJ did not have before her the July 2006 radiological report, although it pre-dated her opinion. Seeing the report likely would have caused her to look more carefully at the evidence before her, including evidence that McIntire intended to have a fusion prior to the ALJ decision and *was* seeking ongoing treatment for her injury.

Additionally, the new opinion and radiological report tend to make McIntire's subjective complaints regarding pain in October 2004 and at the hearing in May 2006 more credible. The ALJ found a record of medical progression, in part by discrediting McIntire's complaints of pain and noting that she was not currently seeking treatment for her ankle. The ALJ did not note any "confusion" in the record, as McIntire described it, perhaps in part because she discredited later evidence of no medical improvement and certainly in part because she did not have before her the July 2006 radiological report and the sec-

ond opinion by Delaney. There is a reasonable probability that Delaney's second opinion and the July 2006 radiological report would have influenced the Commissioner to decide McIntire's DIB and SSI continuation claims differently.

The two new pieces of evidence were new and material, and the Appeals Council failed to give good reasons for the weight it assigned to Delaney's second opinion. This case shall be remanded to the ALJ for consideration of the new evidence. If on remand, the ALJ finds a conflict between the 2006 MRI and other evidence, or between Delaney's second opinion and his first opinion or other evidence, she has an obligation to re-contact the doctor for an explanation of that conflict. 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved."). Remand allows the ALJ an opportunity to consider and appropriately weigh Delaney's opinion and to re-contact Delaney for clarification, if necessary. *See Chavis,* 2010 WL 624039, at *9.

B. *Second Error of Law: Wrong Relevant Time Period*

■ On remand, the ALJ is also ordered to assess McIntire's continued eligibility for SSI benefits. In her decision, the ALJ did not distinguish the proper time period for assessing McIntire's continued eligibility for SSI benefits from the time period for assessing DIB benefits. The issue had been briefed to the ALJ by McIntire's attorney prior to the decision date. (Tr. 902–06, 1659.) In her opinion, the ALJ did not explicitly identify the

relevant time period or cite any legal authority establishing the relevant time period for an SSI cessation review.

In its decision denying review, the Appeals Council did not cite any legal authority establishing the relevant time period for SSI cessation review, but appeared to consider the relevant time period to end on June 1, 2004. (Tr. 11.) The Appeals Council wrote that "additional evidence submitted after receipt of the request for review" was "new information" that was "about a later time" than June 1, 2004. It returned certain evidence to McIntire for use in subsequent claims she had filed. The Appeals Council's decision failed to acknowledge that the relevant time period for determining McIntire's SSI eligibility remained open until the date of the Appeals Council's decision.

The same issue regarding relevant time period for SSI cessation arose and was addressed in *Nieves v. Barnhart,* No. 02 Civ. 9207, 2005 WL 668788 (S.D.N.Y. Mar. 23, 2005). *Nieves* concerned the proper interpretation of 42 U.S.C. § 423(f), which provides that when the Social Security Administration terminates a claimant's benefits, it must examine "all the evidence available in the individual's case file, including new evidence concerning the individual's prior or current condition" to determine whether "the individual is now able to engage in substantial gainful activity." [10]

The plaintiff in *Nieves* argued that the Commissioner must determine whether any medical improvement occurred between the comparison point date and a later date—the date of the ALJ's decision; the Commissioner argued that the relevant time period was the comparison point date

---

**10.** Although the statutory language of 42 U.S.C. § 423(f) establishing the standard of review for termination of disability benefits does not distinguish between DIB and SSI

cases, the Regulations enacting this provision for each benefit create a different standard because of what evidence is material to each claim.

to the date that the benefits were terminated. *Id.* at *2.

The Court resolved the issue by referring to 20 C.F.R. § 416.1476(b)(2), which provides as follows: "In reviewing decisions other than those based on an application for benefits, the Appeals Council will consider the evidence in the administrative law judge hearing record and any additional evidence it believes is material to an issue being considered." *Id.* Additionally, "[t]he official commentary that accompanied the publication of the current version of 20 C.F.R. § 416.1476 in 1987 makes clear (1) that the phrase 'other than those based on an application for benefits' refers to cessation cases and (2) that post-cessation evidence is material because an SSI claimant can reestablish eligibility during the post-cessation appeals process without having to file a new application." *Id.*, *citing* Limit on Future Effect of Applications and Related Changes in Appeals Council Procedures, 52 Fed. Reg. 4001, 4003 (Feb. 9, 1987) (to be codified at 20 C.F.R. pts. 404 & 416) (stating that "in SSI cases not based on an application for benefits (e.g., cases involving suspension or termination of benefits), the Appeals Council will consider additional evidence regardless of whether it relates to the period ruled on by the ALJ or to a subsequent period.").

Thus, *Nieves* concluded that the "end date for determining disability in SSI cessation cases is the date of the Appeals Council's decision on the recipient's claim for benefits." *Nieves,* No. 02 Civ. 9207, 2005 WL 668788 at *3. Additionally, the Court ruled that on remand the ALJ "will consider all material evidence that relates to the period through the date of the ALJ's decision" and that, if the plaintiff subsequently requested Appeals Council review of the ALJ's decision, the "Appeals Council will also consider any additional evidence submitted that relates to a subsequent period." *Id.*

The Commissioner implicitly acknowledged the importance of the *Nieves* ruling in a subsequent case. In *Bagley v. Comm'r of Soc. Sec.,* No. 6:02–cv–0285, 2008 WL 3925632 (N.D.N.Y. Aug. 20, 2008), the plaintiff was moving for an award of attorneys' fees and in order to award them, the Court had to summarize the prior proceedings in the case. Earlier in the litigation, the plaintiff had appealed to the Second Circuit the district court's Decision and Order affirming the Commissioner's termination of his DIB and SSI benefits. While the appeal was pending, the Second Circuit "requested supplemental briefing from the parties as to the effect of *Nieves* " on the case. *Id.* at *1. The *Bagley* Court summarized the *Nieves* decision and regulations as requiring that "the existence of a plaintiff's disability in SSI cessation cases must be considered based on all evidence presented throughout the administrative appeal process, not merely as of the initial cessation date." *Id.* The Court noted that the Commissioner, realizing the significance of the authorities the Circuit had requested briefing on, agreed to remand the case solely to calculate benefits in the plaintiff's favor. *Id.*

In her memorandum urging reversal, McIntire notes that the ALJ considered most carefully evidence as of the date benefits were terminated, June 1, 2004. (Pl. Mem. at 13.) The Commissioner did not dispute this characterization of the ALJ's opinion and indeed, focuses his brief on McIntire's "condition and functional capacity near the time of the comparison point date and the cessation date." (Def. Mot. at 3 n. 3.) In his initial memorandum, the Commissioner states that the "key issue was Plaintiff's functional capacity on June 1, 2004" (*id.* at 22) and that July 2006 was "two years after the relevant date" (*id.* at

23). In support of his statement regarding the "key issue," the Commissioner cites 20 C.F.R. § 404.1594(f)(7). That provision, however, does not direct the ALJ to assess functional capacity at the time of the cessation date; it merely states that the Commission will "assess your residual functional capacity based on all your current impairments." *Id.* It does not define "current." *Id.* In his reply memorandum the Commissioner disputes the characterization that the relevant period applied by the ALJ ended June 1, 2004, but his analysis is not persuasive. (Def.'s Mem. Responding to Pl.'s Reply Memo., doc. # 38, at 5–7.)

Although the ALJ's opinion discussed post-termination evidence (Tr. 38), there is no indication that she was applying the correct legal standard and understood the import of that evidence on McIntire's SSI eligibility. The ALJ's opinion shows that she considered the time between the comparison point date and the termination date to be the relevant time period, and did not recognize that later evidence, i.e., after June 1, 2004, could be relevant. In other words, McIntire may have reestablished SSI eligibility after June 1, 2004 and before the ALJ's decision, but the ALJ's decision does not recognize that possibility and therefore does not analyze the issue.[11]

By denying review, the Appeals Council accepted the ALJ's interpretation of the relevant time period. Additionally, the Appeals Council stated its own view that evidence relating to a time period after June 1, 2004, was not relevant. (Tr. 11.) By adopting the ALJ's opinion and characterization of the relevant time period, the Appeals Council failed to acknowledge that evidence submitted after the ALJ's decision and prior to the denial of her appeal is relevant to McIntire's SSI eligibility. Thus, even though the Appeals Council stated that it "considered" the additional evidence (Tr. 10), it also stated that it thought later evidence was irrelevant. McIntire could have reestablished SSI eligibility between the date of the ALJ decision and the date of the Appeals Council's decision, but the Appeals Council's decision does not recognize that possibility and therefore does not analyze the issue.

The record reveals a risk that McIntire had her SSI eligibility determined according to incorrect legal principles. On remand, the ALJ is ordered to consider all evidence relevant to McIntire's continued eligibility for SSI benefits.

## IV. Conclusion

The case is remanded because of two errors of law. First, the Appeals Council failed to apply the treating physician rule as required by the regulations to address new and material evidence submitted by McIntire to the Appeals Council. Second, neither the ALJ nor the Appeals Council identified the relevant time period for determining McIntire's SSI eligibility. Accordingly, the case is remanded for the ALJ to consider the new and material evidence as it relates to both SSI and DIB and to apply the correct standard for SSI cessation.

Accordingly, McIntire's Motion (doc. # 31) is **GRANTED** and the Commissioner's motion (doc. # 32) is **DENIED.**

It is so ordered.

---

11. The ALJ's decision did not distinguish between McIntire's continued eligibility for SSI and DIB benefits. *Nieves* and *Bagley* both involved SSI cases. Some commentary reads the *Nieves* rule to apply equally to DIB cases.

*See* 3 Soc. Sec. Disab. Claims Prac. & Proc. § 30:2 (2d ed.). Because *Nieves* was justified by reference to SSI-specific regulations and commentary, I do not agree that the standard is applicable to DIB cases.